IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Wiley Y. Daniel

Civil Action No.   08-cv-00415-WYD

TECARRA GRAHAM,

      Applicant,

v.

KEVIN MILYARD, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

      Respondents.

---

## ORDER OF DISMISSAL

---

Applicant Tecarra Graham is a prisoner in the custody of the Colorado

Department of Corrections (DOC) at the Sterling, Colorado, Correctional Facility.  Mr.

Graham has filed a *pro se* Application for a Writ of Habeas Corpus Pursuant to 28

U.S.C. § 2254 challenging the validity of his conviction in the El Paso County District

Court, in combined Criminal Case Nos. 04CR411, 04CR421, 04CR771, 04CR791, and

04CR2181.  In an order filed on April 10, 2008, I directed Respondents to file an Answer

to the Application, which they did on April 30, 2008.  Mr. Graham did not file a Reply.

I must construe liberally Mr. Graham's Application because he is representing

himself.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d

1106, 1110 (10th Cir. 1991).  However, I should not act as a *pro se* litigant's advocate.

*See Hall*, 935 F.2d at 1110.  After reviewing the entire file, including the state court

record, I find that an evidentiary hearing is not necessary.  For the reasons stated

below, the Application will be denied.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Mr. Graham asserts he was charged with numerous felony offenses (Application at 10-11) and pled guilty to one count of second degree murder, six counts of aggravated robbery, one count of attempted aggravated robbery, one count of robbery, and three crime of violence counts (Application at 12-13).  Mr. Graham further asserts that he was sentenced to 100 years of incarceration.  (Application at 2.)   Mr. Graham states that he did not file a direct appeal but that he filed a motion to withdraw his guilty plea, which was denied and affirmed on appeal, and in which an appeal to the state's highest court was denied on February 23, 2007.  I also note that prior to Mr. Graham pleading guilty, a conflict hearing was held at Mr. Graham's request to determine whether there was a conflict with his plea attorneys, and whether his attorneys should continue to represent him.  *State of Colo. v. Graham*, No. 04CR411, State Court Record, Uncertified Transcript of Conflict Hearing at 1 (El Paso Dist. Court Apr. 4, 2005).  The trial court found no conflict, and plea attorneys continued their representation of Mr. Graham.  Furthermore, I note that prior to Mr. Graham's Colo. R. Crim. P. 32(d) hearing, the trial court judge ordered Mr. Graham to undergo a mental competency evaluation, which was completed on March 21, 2005.  State Court Record, Mental Competency Evaluation.

Mr. Graham sets forth three claims in this action, including (1) that his right to due process was violated because he suffered from a mental disability, did not understand his plea agreement due to the disability, and was not allowed to withdraw

his plea; (2) that his right to effective assistance of counsel was denied because plea attorneys failed to communicate with him, misrepresented to him the terms of the plea agreement, and did not investigate his mental disability; and (3) that his right to due process was violated when the trial court found that the prosecution would be substantially prejudiced if his plea was withdrawn.  (Answer at 5-6 and 14-16.)

I find, and Respondents concede, that the instant action is timely under 28 U.S.C. § 2244(d).

## II.  STANDARD OF REVIEW

### A.  Exhaustion of State Court Remedies

Pursuant to 28 U.S.C. § 2254(b)(1), an application for a writ of habeas corpus may not be granted unless it appears that the applicant has exhausted state remedies or that no adequate state remedies are available or effective to protect the applicant's rights.  *See O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Dever v. Kansas State Penitentiary*, 36 F.3d 1531, 1534 (10th Cir. 1994).  The exhaustion requirement is satisfied once the federal claim has been presented fairly to the state courts.  *See Castille v. Peoples*, 489 U.S. 346, 351 (1989).  Fair presentation requires that the federal issue be presented properly "to the highest state court, either by direct review of the conviction or in a postconviction attack."  *Dever*, 36 F.3d at 1534.  "The exhaustion requirement is not one to be overlooked lightly."  *Hernandez v. Starbuck*, 69 F.3d 1089, 1092 (10th Cir. 1995).  A state prisoner bringing a federal habeas corpus action bears the burden of showing that he has exhausted all available state remedies.  *See Miranda v. Cooper*, 967 F.2d 392, 398 (10th Cir. 1992).

Respondents argue that Mr. Graham failed to raise his claims as federal constitutional claims in state court, and as a result the claims were not exhausted and now are procedurally barred.  (Answer at 21-22.)

In denying Mr. Graham's Rule 32(d) motion for withdrawal the Colorado Court of Appeals found as follows:

> Here, at the Crim. P. 11 advisement, both the prosecutor and the court expressed concerns about defendant's hasty decision to accept the agreement because it involved a lengthy sentence and defendant had steadfastly refused to accept the plea until the day before the trial was scheduled to begin.  To alleviate its concerns about defendant's sudden change of heart, the court conducted a thorough advisement, repeatedly asking defendant whether his decision to accept the plea was made voluntarily and whether he had fully discussed the details of the plea with counsel, and informing him that this decision was one that only he could make.  Defendant consistently responded that it was his own choice to accept the plea and that he on multiple occasions discussed the details of the plea with his counsel.

> In addition, at least twice during the advisement, the court specifically informed defendant that his decision to accept the plea would be final and he would not be able to change it if, at some later date, he thought that he had made a mistake or his attorneys had given him bad advice.  In both instances, defendant acknowledged he knew his decision would be final.  Based on this record, the court concluded defendant's plea was voluntary.

> Likewise, the court rejected defendant's claim that his impaired cognitive ability and short-term memory loss rendered his plea involuntary.  On this issue, the court found defendant was competent to enter the plea based on the cognitive testing done by the Colorado Mental Health Institute.  In addition, the court noted its own interaction with defendant belied any claim that defendant's impaired memory rendered his plea involuntary.  These findings are, likewise, supported by the record.

4

The court also rejected defendant's claim he received ineffective assistance of counsel.  The court found, with support in the record, that counsel had investigated the claim and had made a legitimate trial strategy decision not to pursue an insanity defense.  *See Ardolino v. People*, 69 P.3d 73 (Colo. 2003) (to establish ineffective assistance, the defendant was required to overcome the presumption, under the circumstances, that the challenged conduct of his counsel might be considered sound trial strategy).  In addition, the court rejected defendant's claim counsel misled him into believing he would be released in thirty-seven years because the written plea agreement refuted such a conclusion and, during the advisement, defendant stated he was not promised anything other than what was contained in the written agreement.  *See People v. DiGuglielmo*, 33 P.3d 1248 (Colo. App. 2001) (defendant must request clarification at providency hearing rather than raise assertedly incorrect information in postconviction motion).  For similar reasons, the court rejected defendant's claim that he pled guilty because he was told his co-defendant brother would receive more lenient treatment as a result of defendant's guilty plea.

Situations justifying the withdrawal of a guilty plea include "where a defendant may have been surprised or influenced into a plea of guilty when he had a defense; where a plea of guilty was entered by mistake or under a misconception of the nature of the charge," or where "fear, fraud, or official misrepresentation" are established.  *Maes v. People*, 155 Colo. 570, 575, 396 P.2d 457, 459 (1964).  This case does not present one of those situations.  Based on our review of the record, we agree with the trial court's conclusion that defendant did not demonstrate a fair and just reason to withdraw his plea.

Moreover, at the hearing, the prosecution presented an offer of proof indicating that several of its witnesses were military personnel who were prepared to appear at the schedule trial had defendant not accepted the plea.  Those witnesses had since been deployed to Iraq without a scheduled return date.  The court concluded, and we agree, that allowing defendant to withdraw his plea under these circumstances would prejudice the prosecution.

Accordingly, we perceive no abuse of discretion in the trial court's

denial of defendant's motion.

*State of Colo. v. Graham*, No. 05CA1012 at 3-6  (Colo. App. Aug. 31, 2006).

I have reviewed the opening brief Mr. Graham filed in his appeal to the Colorado Court of Appeals of the trial court's denial of his Rule 32(d) motion for withdrawal of his guilty plea.  (Answer Ex. A.)  In the brief, Mr. Graham states that he did not "enter his plea knowingly, voluntarily, and intelligently due to issues with his memory and conflicts with his counsel at the time of his plea agreement."  (Answer Ex. A at 7.)[1]  Mr. Graham's claims were postured under Rule 32(d), which addresses only whether there was a "fair and just reason" for a withdrawal of a plea, *see State of Colo. v. Chippewa*, 751 P.2d 607, 609 (Colo. 1988).  Although the court of appeals held that defendant did not demonstrate a fair and just reason for withdrawing his plea, the support for such a finding was the court of appeals' determination that Mr. Graham failed to assert either ineffective assistance of counsel and or an involuntary plea.  I, therefore, find that Mr. Graham has presented and exhausted both his ineffective assistance of counsel claim and his involuntary plea claim.

Mr. Graham's third claim, a violation of his due process rights due to a finding of prejudice to the prosecution, was not presented to the state court.  With respect to the prejudice to prosecution claim, the court of appeals simply determined whether or not the trial court abused its discretion.  Nothing in the court of appeals' decision reached the issue of a violation of Mr. Graham's due process in the denial of his motion to withdraw a plea of guilty based on the prosecution's prejudice.  The determination was

---

[1]  Page numbers referred to in the citations to documents filed in this case are the page numbers identified by the Court's Electronic Court Filing system.

based solely on a finding that the trial court did not abuse its discretion in finding

prejudice to the prosecution in granting a withdrawal of the plea.  An abuse of discretion

by itself does not constitute grounds for federal habeas relief.  *See Hawkins v.*

*Champion,* 982 F.2d 528, 1992 WL 372598, at 4 n. 5 (10th Cir. Dec. 18, 1992)

(unpublished op.) ("By itself abuse of discretion by a state trial judge does not raise a

constitutional issue cognizable on federal habeas review.")  Nothing in Mr. Graham's

opening brief before the court of appeals, or the court of appeals' opinion, addresses

the trial court's abuse of discretion issue in terms of being so fundamentally unfair that

Mr. Graham's due process rights were violated.  Accordingly, I find that Mr. Graham has

not exhausted Claim Three.

Claims are precluded from federal habeas review when the claims have been

defaulted in state court on an independent and adequate state procedural ground.

*Steele v. Young*, 11 F.3d 1518, 1521 (10th Cir. 1993) (citations omitted).  "A state

procedural ground is independent if it relies on state law, rather than federal law, as the

basis for the decision . . . .  For the state ground to be adequate, it must be strictly or

regularly followed and applied evenhandedly to all similar claims."  *See Hickman v.*

*Spears*, 160 F.3d 1269, 1271 (10th Cir. 1998) (internal quotations and citations omitted).

Also, if it is obvious that an unexhausted claim would be procedurally barred in state

court the claim is held procedurally barred from federal habeas review.  *Steele*, 11 F.3d

at 1524 (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *Harris v. Reed*,

489 U.S. 255, 269-70 (1989)).

"Generally speaking, [the court] do[es] not address issues that have been

defaulted in state court on an independent and adequate state procedural ground, unless the petitioner can demonstrate cause and prejudice or a fundamental miscarriage of justice." *Cummings v. Sirmons*, 506 F.3d 1211, 1224 (10th Cir. 2007) (internal quotations and citation omitted). Mr. Graham's *pro se* status does not exempt him from the requirement of demonstrating either cause and prejudice or a fundamental miscarriage of justice. *See Lepiscopo v. Tansy*, 38 F.3d 1128, 1130 (10th Cir. 1994).

Ineffective assistance of counsel, however, may establish cause excusing a procedural default. *Jackson v. Shanks*, 143 F.3d 1313, 1319 (10th Cir. 1998). An applicant, however, must show "that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule" and have "presented to the state courts [ ] an independent claim before it may be used to establish cause for a procedural default." *Murray v. Carrier*, 477 U.S. 478, 488-89 (1986). A showing of a probability of actual innocence is required to meet the fundamental miscarriage of justice exception. *See Bousley v. United States*, 523 U.S. 614, 622 (1998).

Respondents argue that Mr. Graham no longer has an adequate and effective state remedy available to him, because when it is clear that unexhausted claims are procedurally barred due to the anticipatory procedural default doctrine, in the absence of a showing of cause and prejudice, federal habeas review is barred. (Answer at 22.) Respondents further argue that a postconviction motion now under Colo. Rev. Stat. § 16-5-402 would be untimely and barred under Colo. R. Crim. P. 35(c)(3)(VI). (Answer at 22.)

As Mr. Graham has failed to reply and assert cause and prejudice, I find that he has procedurally defaulted Claim Three.  The claim is denied as procedurally barred from federal habeas review.

B.  Merits

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus shall not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Claims of legal error and mixed questions of law and fact are reviewed pursuant to 28 U.S.C. § 2254(d)(1).  *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003). The threshold question pursuant to § 2254(d)(1) is whether Mr. Graham seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final.  *See Williams v. Taylor*, 529 U.S. 362, 390 (2000).  Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."  *Id*. at 412. Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*.  Although the legal rule at

9

> issue need not have had its genesis in the closely-related or
> similar factual context, the Supreme Court must have
> expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).

If there is no clearly established federal law, that is the end of my inquiry

pursuant to § 2254(d)(1).  *See id.* at 1018.  If a clearly established rule of federal law is

implicated, I must determine whether the state court's decision was contrary to or an

unreasonable application of that clearly established rule of federal law.  *See Williams*,

529 U.S. at 404-05.  Pursuant to *House,*

> A state-court decision is contrary to clearly established
> federal law if: (a) "the state court applies a rule that
> contradicts the governing law set forth in Supreme Court
> cases"; or (b) "the state court confronts a set of facts that are
> materially indistinguishable from a decision of the Supreme
> Court and nevertheless arrives at a result different from [that]
> precedent." *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th
> Cir. 2006)] (internal quotation marks and brackets omitted)
> (quoting *Williams*, 529 U.S. at 405 [   ]).  "The word 'contrary'
> is commonly understood to mean 'diametrically different,'
> 'opposite in character or nature,' or 'mutually opposed.' "
> *Williams*, 529 U.S. at 405 [   ] (citation omitted).
>
> A state court decision involves an unreasonable
> application of clearly established federal law when it
> identifies the correct governing legal rule from Supreme
> Court cases, but unreasonably applies it to the facts.  *Id.* at
> 407-08 [   ].  Additionally, we have recognized that an
> unreasonable application may occur if the state court either
> unreasonably extends, or unreasonably refuses to extend, a
> legal principle from Supreme Court precedent to a new
> context where it should apply.  (citation omitted).

*House*, 527 F.3d at 1018.

My inquiry pursuant to the "unreasonable application" clause is an objective

inquiry.  *See Williams*, 529 U.S. at 409-10.  "[A] federal habeas court may not issue the

writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id.* at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671. "[O]nly the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Id.*

Claims of factual error are reviewed pursuant to 28 U.S.C. § 2254(d)(2). *See Romano v. Gibson*, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002). Section 2254(d)(2) allows me to grant a writ of habeas corpus only if the state court decision was based on an unreasonable determination of the facts in light of the evidence presented. Pursuant to § 2254(e)(1), I must presume that the state court's factual determinations are correct, and Mr. Graham bears the burden of rebutting the presumption by clear and convincing evidence. "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.' " *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

Finally, I "owe deference to the state court's *result*, even if its reasoning is not expressly stated." *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999). Therefore, I "must uphold the state court's summary decision unless [my] independent review of the record and pertinent federal law persuades [me] that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id.* at 1178. "This

'independent review' should be distinguished from a full de novo review of the petitioner's claims."  *Id.*

### Due Process/Involuntary Plea/Ineffective Assistance of Counsel

It clearly was established when Mr. Graham was convicted that a defendant has a right to effective assistance of counsel.  *See Strickland v. Washington*, 466 U.S. 668 (1984).  To establish that counsel was ineffective, Mr. Graham must demonstrate both that counsel's performance fell below an objective standard of reasonableness and that counsel's deficient performance resulted in prejudice to his defense.  *See id.* at 687-88. "Judicial scrutiny of counsel's performance must be highly deferential."  *Id.* at 689. There is a "strong presumption" that counsel's performance falls within "the wide range of reasonable professional assistance."  *Id.*  It is the defendant's burden to overcome this presumption by showing that the alleged errors were not sound strategy under the circumstances.  *Id.*  Under the prejudice prong, Mr. Graham must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  If Mr. Graham fails to satisfy either prong of the *Strickland* test, the ineffective assistance of counsel claim must be dismissed.  *Strickland*, 466 U.S. at 697.  Finally, ineffective assistance of counsel claims are mixed questions of law and fact.  *Id.* at 698.

The Supreme Court has held that this standard also applies in the context of a guilty plea.  *See Hill v. Lockhart*, 474 U.S. 52, 57 (1985).  To show prejudice in the context of a guilty plea, Mr. Graham must demonstrate that "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Id.* at 59.

A defendant may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann v. Richardson*, 397 U.S. 759, 770-71 (1970).  In *McMann*, the Court determined that whether a plea is unknowing depends on if counsel's advice was within the range of competence demanded of attorneys in criminal cases, not on if a court retrospectively would consider counsel's advice to be right or wrong.  *Id.*

"When an involuntariness [of a guilty plea] claim rests on the faulty legal decisions or predictions of defense counsel, the plea will be deemed constitutionally involuntary only when the attorney is held to have been constitutionally ineffective." *Worthen v. Meachum*, 842 F.2d 1179, 1184 (10th Cir. 1988) (overruled on other grounds by *Coleman v. Thompson*, 501 U.S. 722 (1991) (citing *Hill v. Lockhart*, 474 U.S. 52, 56 (1985)).

Mr. Graham asserts that he has comprehension and memory problems, as well as a very serious lung condition that makes it difficult to supply oxygen to his brain. (Application at 14.)  Mr. Graham further asserts that the day prior to trial his attorneys told him that he needed to plead guilty, and if he did plead guilty he would only serve thirty-seven years of incarceration at the DOC.  (Application at 14.)  Mr. Graham also asserts that even though he did not understand the plea agreement, because his criminal proceedings involved several cases and were complex, he pled guilty. (Application at 14.)

Mr. Graham contends that after he returned to jail he showed the agreement to other inmates who informed him that he would not serve just the thirty-seven years, as

13

he understood that he would, and he immediately called one of his plea attorneys to request that he withdraw his plea and proceed to trial.  (Application at 14.)  Mr. Graham further contends that his attorney did not return his call and did not file a motion to withdraw his plea, but three weeks later he filed his own motion, subsequent to which the trial court judge ordered Mr. Graham to be evaluated by a doctor.  (Application at 14.)  Mr. Graham concludes that as a result of the evaluation he was found to have mental deficiencies and disorders that make it difficult for him to understand complex issues and to retain new information, and as a result he requires legal concepts to be explained to him slowly in simple and clear terms and to be repeated frequently. (Application at 14.)

Respondents argue that based on the statements made by Mr. Graham, and his attorney, in the Rule 11 advisement hearing, Mr. Graham entered his plea knowingly and voluntarily and with a full understanding of the nature of the plea and its consequences.  (Answer at 25.)  Respondents contend that Mr. Graham assured the trial court that he understood his plea agreement and the consequences of pleading guilty by indicating he understood his rights and was not suffering from any sort of mental impairment that affected his ability to understand the plea agreement or the proceedings.  (Answer at 26.)  Furthermore, Respondents assert that the plea attorneys informed the court that Mr. Graham was mentally competent, and the competency evaluation did not demonstrate that Mr. Graham was unable to adequately understand his circumstances and the nature of his plea agreement.  (Answer at 26.)  Respondents also assert that (1) the plea agreement was provided to Mr. Graham well before the

14

advisement hearing; (2) both plea attorneys explained the agreement to him numerous times; (3) both plea attorneys testified Mr. Graham appeared to understand the agreement; (4) Mr. Graham unequivocally told the court he understood the agreement; and (5) the trial court conducted a lengthy and thorough advisement of Mr. Graham's rights. (Answer at 26.)  Respondents conclude the record supports that Mr. Graham had sufficient ability to consult with his attorney and had a rational, as well as, a factual understanding of the proceedings against him.  (Answer at 26-27.)

With respect to Mr. Graham's involuntary plea claim, the findings of the Colorado Court of Appeals are stated above under Section "A. Exhaustion of State Court Remedies."

Mr. Graham also asserts that throughout his criminal proceedings he had problems with his court-appointed attorneys because they did not communicate with him, they failed to prepare a proper defense, including the investigation of mental competency issues he wanted to pursue, and they did not explain the complex legal issues involved in his criminal case.  (Application at 15.)  Mr. Graham contends that his plea attorneys pressured him into entering a plea agreement the day before the trial was to take place and that he tried to inform the court that there was a conflict of interest with his plea attorneys, because they were not doing their job.  (Application at 15.)  Mr. Graham also contends that his plea attorneys misinformed him about the amount of time he would serve, and not until after he signed the plea agreement did he find out that he would not necessarily be released from prison upon serving thirty-seven years of incarceration.  (Application at 15.)  Mr. Graham contends he called one of his

plea attorneys, within forty-eight hours after he pled, and asked him to file a motion to withdraw his plea, but his attorney would not return his call.  (Application at 15.) Subsequently, he filed his own motion to withdraw three weeks later.  (Application at 15.)

Respondents argue, relying on *United States v. Crouthers*, 669 F.2d 635, 643 (10th Cir. 1982), that not every possible motion, argument, or defense has to be made by counsel, only those that have a solid foundation.  (Answer at 28.)  Respondents contend that in Mr. Graham's case the records indicate that from a very early point the plea attorneys were aware of possible mental health issues and investigated that avenue of defense by speaking with experts and reviewing records, including discovery reports that discuss interviews with military personnel who knew Mr. Graham when he served in Iraq.  (Answer at 28.)  Respondents contend that the plea attorneys considered all information, as well as Mr. Graham's own desire to not pursue a mental health defense, and decided not to pursue such a defense, because the mental health information would not support the defense.  (Answer at 28-29.)

Respondents also contend that the plea attorneys' decision was a strategic one. (Answer at 29.)  They further contend that Mr. Graham has failed to establish that had his attorneys entered such a plea, or pursued such a defense, there was persuasive evidence to support such a defense, because he has not demonstrated that any expert would opine that his circumstances in Iraq led to a mental condition rendering him legally insane or otherwise impaired that he could not form the culpable mental state. (Answer at 29.)

16

Respondents conclude that the competency evaluation conducted on Mr. Graham supports the plea attorneys' assessment of the non-viability of an insanity defense, their performance in investigating such a defense was not deficient, and Mr. Graham, therefore, fails to establish any prejudice.  (Answer at 29.)

With respect to Mr. Graham's claim that his plea attorneys misadvised him about the total amount of time that he may serve, Respondents assert the trial court noted that both plea attorneys made it very clear to Mr. Graham that he was only parole eligible after serving thirty-eight percent of his sentence and did not guarantee him that he would be released in thirty-seven or thirty-eight years.  (Answer at 30.)  Respondents contend that because the trial court accepted the plea attorneys' testimony the finding must be deferred to by this Court under *Saiz v. Ortiz*, 392 F.3d 1166, 1180 (10th Cir. 2004), and 28 U.S.C. § 2254(e)(1).  (Answer at 30.)  Respondents also contend that Mr. Graham acknowledged in the written plea agreement and at the Rule 11 advisement hearing that no promises were made regarding his sentence.  (Answer at 30.)

The findings of the Colorado Court of Appeals with respect to Mr. Graham's ineffective assistance of counsel claim are set forth above in Section "A. Exhaustion of State Court Remedies."

Upon extensive review of the transcripts of the conflict hearing, the Rule 11 advisement hearing, and the Rule 32(d) hearing, and the mental competency evaluation, I find the following.  Although testimony was provided by an expert at the Rule 32(d) hearing that Mr. Graham suffers specifically from short-term memory loss, the memory loss does not impair his ability to process information he already knows and

17

to process new information if the information is repeated to him, especially if the information is repeated to him over a course of three to four days.  *State of Colo. v. Graham*, No. 04CR411 at Vol. # 13 at 81-85.  Both of Mr. Graham's plea attorneys, at the Rule 32(d) hearing, testified that they met with Mr. Graham on at least a daily basis the week prior to his decision to accept a plea and repeatedly discussed a trial versus a plea and parole eligibility.  Vol. # 13 at 92, 94, and 114.  Besides reading the plea to Mr. Graham, plea attorneys testified that they provided him with a copy of the plea agreement the week-end before he pled guilty and gave him a copy of the state statute that pertains to parole eligibility.  Vol. # 13 at 91 and 122.  Both attorneys also testified that Mr. Graham was told that based on the relevant state statute he would be parole eligible after thirty-eight percent of his sentence was served and that they discussed with him for at least an hour the terms of the plea agreement, when it was first presented.  Vol. # 13 at 92 and 123.  Both attorneys further testified that Mr. Graham participated in their discussions and asked questions that were relevant and intelligent. Vol. # 13 at 114 and 119.

Mr. Graham testified at the Rule 32(d) hearing that with respect to the plea agreement he "understood what [he] believed to be true" and the whole time when he was signing the plea agreement he was "thinking thirty-seven years is all I have to do at the most."  No matter what the paper says, how many pleas I have to plea to, thirty-seven years is the maximum of what I have to do.  This is what I know. This is what he tells me."  Vol. # 13 at 24.

Nonetheless, at the Rule 11 advisement hearing, the trial court judge stated that

the plea agreement included a total sentence of 100 years in the Colorado Department of Corrections plus a five-year mandatory parole to which Mr. Graham responded "Yes, Your Honor," indicating that he understood the length of the sentence.  Vol. # 10 at 7-8. Also, at the conflict hearing, Mr. Graham stated, at least twice, that under the plea he was subject to a 100-year sentence.  Conflict Hearing at 17 and 20.  Also, Mr. Graham affirmed under cross-examination at his Rule 32(d) hearing that he was crying after the conflict hearing when he realized that he would be facing 100 years of incarceration under the plea agreement.  Vol. # 13 at 26.

The trial court judge also queried Mr. Graham at the Rule 11 advisement hearing as to whether he had been forced to plead guilty and if there had been any other promises or representations made to him about the sentence that would be imposed to which he responded "no."  Vol. # 10 at 17-18.  The judge further asked Mr. Graham if he believed pleading guilty was the right decision for him and was done under his own free will to which he responded "yes" to both questions.  Vol. # 10 at 18.  The trial court judge also at the advisement hearing reminded Mr. Graham that his decision to plea was final and that he was entitled to conflict-free representation.  Vol. # 10 at 4-5.  I also note that at the Rule 11 advisement hearing Mr. Graham stated he had the opportunity to read the plea agreement and understand the agreement, contrary to his testimony at the Rule 32(d) hearing when he stated that he did not read the agreement but only had the agreement read to him by one of the plea attorneys.  Vol. # 10 at 9 and Vol. # 13 at 39.

Based on the above testimony, I find that Mr. Graham entered into his plea

knowingly and voluntarily.  There is no indication that Mr. Graham was pressured into

signing the plea agreement, as he had sufficient time to discuss the terms of the plea

agreement with his plea attorneys for at least six days prior to the day he signed the

agreement.  Mr. Graham was given a copy of the plea agreement, along with a copy of

the state parole eligibility statute.  He also failed to acknowledge at his advisement

hearing that there had been any other promises or representations made to him about

the sentence.  There also is no indication that Mr. Graham failed to grasp the terms of

his sentence pursuant to the plea agreement.  The results of Mr. Graham's mental

competency evaluation indicate that the evaluator found Mr. Graham to have a good

understanding of the charges against him, an appreciation of the penalties he faces,

and an excellent grasp of legal concepts and court processes and procedures.  State

Court Record, Mental Competency Evaluation at 7.  In deference to the trial court's

findings at the Rule 32(d) hearing, Vol. #13 at 155-58, I find that Mr. Graham has failed

to submit clear and convincing evidence that his plea was unknowingly and involuntarily

made.  Mr. Graham, therefore, has failed to demonstrate that he was prejudiced and but

for counsel's alleged failure to inform him of the extent of his sentence he would not

have pleaded guilty and would have insisted on going to trial.

As for Mr. Graham's claim that his plea attorneys failed to prepare a proper

defense, the only possible defense to which he refers is either an insanity or mental

incompetency defense.  Nonetheless, one of the plea attorneys stated at the conflict

hearing that they talked with an expert regarding Lariam (the anti-malaria drug given to

Mr. Graham while he was in Iraq) toxicity and discussed symptoms and possible testing,

and that they talked with a forensic neuropsychologist to determine the possibility of an insanity defense.  State Court Record, Conflict Hearing Transcript at 11.  The plea attorney also stated that the insanity defense was not pursued because nothing in Mr. Graham's conduct rose to the level that he did not know right from wrong based on a mental illness or defect.  Conflict Hearing Transcript at 11.  Furthermore, Mr. Graham stated at his conflict hearing that "we don't have to go that route because I know for myself I am not crazy," indicating his own reluctance to seek an insanity defense. Conflict Hearing Transcript at 8.  Plea attorneys' decision to not pursue the insanity defense, therefore, was no more than sound strategy under the circumstances.

To the extent Mr. Graham contends that the plea attorneys did not explain the complex legal issues involved in his criminal case, the claim is vague and conclusory and is belied by the findings in his mental competency evaluation, as stated above. Furthermore, Mr. Graham does not assert what legal issue he did not understand other than the length of his sentence, which based on the above findings was known by him to be 100 years.

Based on the above findings, Mr. Graham has failed to demonstrate that counsel's performance fell below an objective standard of reasonableness and that counsel's deficient performance resulted in prejudice to his defense.

Although Mr. Graham raised in state court, but did not raise in his Application, the plea attorneys' failure to endorse one witness and to inform him that his brother would not receive a reduced sentence if Mr. Graham pled guilty, these claims either were found to lack merit by the trial court judge at the conflict hearing or were refuted by the

testimony provided at the Rule 32(d) hearing.  Vol. #13 at 98-99 and 153-59; Conflict

Hearing at 16-18.  I defer to the trial court findings and find the refuting testimony

credible.  The claims, therefore, are without merit.

III.  CONCLUSION

I find that with respect to the claims Mr. Graham has raised in this Application,

the state court adjudication did not result in a decision that was contrary to, or involved

an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States; nor was the decision based on an unreasonable

determination of the facts in light of the evidence presented in the state court

proceeding.  Accordingly, it is

ORDERED that the Application is **DENIED** and the action is **DISMISSED WITH

PREJUDICE**.  It is

FURTHER ORDERED that each party shall bear his own costs and attorney's

fees.  It is

FURTHER ORDERED that the Clerk of the Court is directed to return to the El

Paso County District Court the state court records, including one CD Rom marked "File,

Exhibits, Sealed, Trans, 6/30/09, Graham, Tecarra Lee, 04CR411, 04CR421, 04CR771,

04CR791, & 04CR2181 All Cases."

Dated:  September 21, 2009

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge